UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

AUTUMN ACRES SENIOR VILLAGE, INC.,

        Plaintiff,

v                                              Case No. 18-13119
                                              Honorable Thomas L. Ludington

VILLAGE OF MAYVILLE, BARBARA VALENTINE,

        Defendants.
_____/

**ORDER DIRECTING PLAINTIFF TO SUPPLEMENT ITS COMPLAINT AND AMENDING THE SCHEDULING ORDER**

On October 4, 2018, Plaintiff Autumn Acres Senior Village, Inc. ("Autumn Acres") filed a Complaint against Defendants Village of Mayville (the "Village") and Barbara Valentine. ECF No. 1 at PageID.1. On December 20, 2018, Plaintiff filed an Amended Complaint, identifying four causes of action against Mayville. ECF No. 9 at PageID.52. Count I alleges that Mayville engaged in an illegal taking when it refused to provide Plaintiff with a municipal water connection. Count II contends that the Village's refusal to provide a water connection deprived Autumn Acres of its constitutionally protected rights of due process. *Id.* at PageID.71. Count III asserts that Mayville violated Autumn Acres' federal and state equal protection rights by treating Autumn Acres differently than other developers. *Id.* at PageID.73. Count IV claims that Mayville made false and defamatory statements regarding Autumn Acres' illicit extension of the water main. *Id.* at PageID.74-75.

**I.**

Two prior state court proceedings occurred relating to the allegations made in Plaintiff's complaint. The first was filed on May 12, 2014 and heard in 71-B District Court in Tuscola County.

The second was filed on November 16, 2015 in the 54th Circuit Court for Tuscola County. The parties appealed the 54th Circuit Court decision.

While the appeal of the state court proceeding was pending, Defendant filed a Motion to Dismiss this case on June 5, 2019. ECF No. 17 at PageID.129. Plaintiff filed its response to the Motion to Dismiss on June 24, 2019. ECF No. 19 at PageID.225. Though permitted to file a reply pursuant to Local Rule 7.1(e)(C), Defendants did not do so.

On October 30, 2019, the parties were directed to file supplemental briefing to provide additional factual information. ECF No. 21. On November 19, 2019, the Michigan Court of Appeals entered its order, affirming the decision of the 54th Circuit Court. The next day, the parties submitted their supplemental briefing to this Court.

**II.**

The property at issue (the "Property") consists of approximately 12 acres. ECF No. 23-2 at PageID.498. Plaintiff purchased the Property in 2000 for approximately $54,000 with the intent to develop the Property into a senior village for individuals 55 years of age and older. *Id.* The Property did not have municipal water service at the time of purchase. *Id.*

On the Property is a drive formerly owned by Plaintiff called "Roller Way." It runs north-south and is perpendicular to "Main Street." In 2003, Plaintiff dedicated it as a right of way to the Village the first 140 feet of Roller Way running from Main Street, making those 140 feet a public road. *Id.* at PageID.503.

Five structures exist on the Property that are relevant to this case. The attached diagram demonstrates the approximate location of the structures and their relation to each other. *See* Exhibit A. In 2003, Plaintiff constructed a duplex near the southern border of the Property ("320 and 325 Roller Way"). ECF No. 23-2 at PageID.500. In 2006 and 2007, Plaintiff constructed another

duplex north of 320 and 325 Roller Way ("324A and 324B Roller Way"). *Id.* at PageID.501. The home of Plaintiff's principal, Clare Roller, is located Northwest of 324A and 324B Roller Way ("330 Roller Way"). In 2013, Plaintiff installed two mobile homes east of 324A and 324B ("325 and 327 Roller Way").

**A.**

In 2006, Roger Sweet was employed with the Village's Department of Public Works ("DPW") as the DPW Supervisor. According to Roller, Sweet told him that the Village would provide the Property with municipal water via a water main. The water main would run north from the Main Street water main along Roller Way.

According to Roller, he and Sweet measured the entirety of the proposed water main and determined that it would need to be approximately 360 feet in length. *Id.* at PageID.503. Sweet told Roller that the Village would pay for the first 140 feet of the water line ("First Extension") because the Village owned the first 140 feet of Roller Way. Plaintiff would be responsible for paying for the remaining 220 feet in length ("Second Extension). *Id.* at PageID.504. In 2007, a contractor, Henry Bollon, installed the 360-foot water main. The village later billed Plaintiff for 200 feet of water main materials. *See* ECF No. 24-11.

In 2011, Bollon extended the water main to 330 Roller Way ("Third Extension"). Roller claims that Sweet approved the Third Extension. ECF No. 23-2 at PageID.506.

In 2013, Roller installed his two mobile homes, 325 and 327 Roller Way. ECF No. 23-2 at PageID.507. He claims that earlier that year, the Village had agreed to provide 325 and 327 Roller Way access to municipal water for $1,800. *See* ECF No. 19-2 at PageID.257; ECF No. 23-8 at PageID.553. To accomplish this, the Village constructed a water meter pit south of 325 Roller Way. ECF No. 19-2 at PageID.264. The pit soon flooded with groundwater. *Id.* Regardless, the

Village sent Roller an invoice totaling more than $3,000 for the construction of the pit, notwithstanding the estimate for $1,800. ECF No. 23-4 at PageID.523.

Roller then installed a water line from 330 Roller Way to the meter pit ("Fourth Extension"). ECF No. 23-2 at PageID.508. He later ran a water line from the meter pit to 325 and 327 Roller Way ("Fifth Extension"). Roller claims that he received approval to construct the Fourth Extension, but did not receive approval to construct the Fifth Extension.

**B.**

For reasons that are not immediately clear, the Village contends that "the parties only agreed to extend municipal water for 140' and that all water line extensions beyond 140' are in violation of Village's Ordinances and MDEQ standards." ECF No. 23 at PageID.484. Accordingly, the Village claims that Roller did not receive approval to construct Extensions 2, 3, 4, or 5.

**III.**

As earlier noted, two state court cases in Tuscola County have arisen out of these events, one in 71-B District Court and the other in the 54th Circuit Court.

**A.**

The first case was in 71-B District Court in Tuscola County.[1] ECF No. 23-4. Plaintiff alleged that the Village improperly constructed the meter pit. ECF No. 23-4. The Village filed a countercomplaint alleging that Plaintiff had violated various provisions of the Mayville Water Ordinance. The Village then filed a motion for a directed verdict.

Judge Glaspie granted the motion, finding that Plaintiff violated the Mayville Water Ordinance when he constructed the Fifth Extension from the meter pit to 325 and 327 Roller Way. *See* ECF No. 24-8 at PageID.682-683. Judge Glaspie made clear however that outstanding issues

---

[1] Plaintiff originally filed the case in Tuscola County Circuit Court on May 12, 2014. It was later transferred to 71-B District court in Tuscola County.

remained.[2] *Id.* at PageID.683-384 ("[T]here's still issues here about what cost, if any, the Plaintiff should incur as a result of the installation and costs of the water pit…He agreed to pay 1800, there were charges of 3200.").

Plaintiff disconnected the Fifth Extension. However, neither party has explained how the remaining issues in the case were resolved, specifically whether the Village had properly constructed the meter pit, why the charges were $3,200.00, and who paid these expenses.

**B.**

Plaintiff claims that the Village "did not turn on water to the…mobile homes after the Plaintiff disconnected the temporary connection in August 2015." ECF No. 9 at PageID.58. Accordingly, on November 16, 2015, Plaintiff filed a complaint against the Village in the 54th Circuit Court for Tuscola County and appeared before Judge Kenneth W. Schmidt. The complaint provides, "As of October 2014, Plaintiff had tendered to the Village the balance of remaining costs and fees due and/or which were required to be tendered under the Plaintiffs agreement with the Defendant for Defendant's installation of water meters." ECF No. 17-2 at PageID.157. The complaint presented the following five counts: [1] breach of contract to connect the mobile homes to the water supply with individual meters; [2] promissory estoppel; [3] breach of implied contract; [4] restitution for the payment of water and sewer usage fees and taxes; and [5] regulatory taking. *Id.* at PageID.158-161.

The Village then filed a Counter-Complaint, claiming that Autumn Acres had illegally extended the water main beyond the First Extension without a permit or authorization. The Village

---

[2] Plaintiff filed an interlocutory appeal, but subsequently withdrew the appeal. ECF No. 24-10. In its supplemental briefing, Plaintiff claims that the appeal was "dismissed by a procedural order." However, the attached order of dismissal provides "[t]he Plaintiff/Appellant has filed a Motion for Dismissal of Interlocutory Appeal." *Id.* at PageID.693. Plaintiff has not explained what occurred during the pendency of the appeal, which was dismissed almost a year after Judge Glaspie granted the Village's motion for directed verdict. Nor has Plaintiff explained why it ultimately withdrew the appeal.

requested: [1] a declaratory judgment that the water main extension was in violation of local ordinances and the Michigan Safe Drinking Water Act and [2] that the court enjoin Autumn Acres from using the water main until it was brought into compliance.

In August 2017, a jury trial was held to determine Counts I and II of Plaintiff's complaint. Determining whether the Village had approved extensions beyond Extension 1 and entered into a contract with Plaintiff was complicated by the fact that Roger Sweet had died. ECF No. 19-2 at PageID.262, 278; ECF No. 19-3 at PageID.319, 337. In arguing that a contract for the provision of water services existed, Plaintiff relied upon a memorandum of the meeting between Roller and members of the Village government. ECF No. 19-2 at PageID.257-260; ECF No. 19-3 at PageID.306. The memorandum provided in part that Roller "wanted to have a meter installed and agreed to pay the tap in fees that amounted to around 1800.00." ECF No. 23-8 at PageID.553.

The jury found that a contract existed, providing that the Village was required to connect the two mobile homes to the water supply. ECF No. 17-3 at PageID.194-195. It further found that the Village did not breach the contract, but that, presumably its obligation to furnish water remained executory. *Id.*

Judge Schmidt subsequently held a bench trial to determine Counts III-V. Concerning Count III, he held that because there was an express contract, there was no implied contract or contract based on promissory estoppel. *Id.* at PageID.199. Concerning Count IV, restitution, he held in favor of the Village. *Id.* at PageID.203. Concerning Count V, he determined that no regulatory taking had occurred. *Id.* Lastly, he dismissed Defendant's counter-complaint, holding that "the doctrine of Latches [sic] and/or Estoppel [] bars the relief sought in the counter-complaint at this time." ECF No. 17-3.

Plaintiff later filed a motion for judgment notwithstanding the verdict or a new trial. At that hearing, Judge Schmidt clarified that Plaintiff could bring a new cause of action against Defendants if Defendants unreasonably withheld water services. The transcript provides

> So that's--that is open frankly as to future negotiations as to what the--the village may have to do in order to give water service to the two mobile homes, and perhaps other developments that may occur in the future. And if the--as we talked about during argument, *if those requests are unreasonable, there may be a new cause of action that may be brought to--against the village*.

ECF No. 19-5 at PageID.444-445 (emphasis added).

## C.

The parties appealed the decision. On November 19, 2019, post-dating the parties' pleadings in this case, the Michigan Court of Appeals affirmed the trial court's verdict. ECF No. 23-11. It held that there was evidence that corroborated Plaintiff's contention that he had the Village's consent and participation for at least three of the four extensions past the First Extension. It cites to Roller's and Bollon's testimony in which both men testified that Sweet was present at the time of the excavations. It found persuasive the fact that "defendant charged Roller for 200 feet of eight-inch water main in December 2007" despite the Village's contention that it only approved of the First Extension, measuring 140 feet. ECF No. 24-21 at PageID.726. It also held that "[w]hile defendant's president testified that if Sweet had performed a water-main extension, he would have been expected to report it to defendant's council, that does not establish that Sweet did not in fact perform the extension without reporting it." *Id.*

In closing, the court stated:

Because the evidence established that Sweet applied for a permit for 140 feet, but Sweet worked on extending the water main to the duplex with plaintiffs contractor, and Sweet charged Roller for 200 feet of eight-inch water main, we are not definitely and firmly convinced that the trial court made a mistake when it found that plaintiff had not violated the [Safe Drinking Water Act]. Likewise, *given that defendant had not established that it was more likely than not plaintiff–rather than defendant–that attached pipes to the water system without a proper permit, we are*

> *not definitely and firmly convinced that the trial court made a mistake when it found that defendant had not established that plaintiff violated the Mayville Code.*

*Id.* at PageID.727 (emphasis added).

**D.**

On October 4, 2018, Plaintiff filed a complaint beginning this case against Defendants. Plaintiff then filed an amended complaint on December 20, 2018. ECF Nos. 1, 9. Plaintiff claims that after the 2017 state court proceeding before Judge Schmidt, Plaintiff contacted the Village about providing 325 and 327 Roller Way with water service. ECF. No. 9 at PageID.61. According to Plaintiff, the Village responded that it would not provide Plaintiff any water service past the First Extension until Plaintiff complied with Village ordinances and MDEQ regulations. *Id.* at PageID. 61-62. Additionally, Plaintiff would have to pay for excavations in at least four locations and the installation of a hydrant (amongst other conditions). *Id.* at PageID.66. Plaintiff claims that these are unconstitutional "ultimatums" premised on false assertions that the Village was uninvolved in the water line extensions past First Extension. *Id.*

Plaintiff's amended complaint presents four counts against Defendants, specifically: [1] an illegal taking in violation of 42 U.S.C. § 1983; [2] denial of due process in violation of 42 U.S.C. § 1983; [3] a violation of equal protection; and [4] defamation.

**IV.**

On June 5, 2019, Defendants filed a motion to dismiss, claiming that Plaintiff's amended complaint is precluded by res judicata due to the two prior state court proceedings. ECF No. 17.

However, both the Circuit Court and the Michigan Court of Appeals, have concluded that the Village has an executory obligation to provide 325 and 327 Roller Way with municipal water. The Village contends that it will fulfill this obligation once Plaintiff brings its water mains into compliance with the Village ordinances and MDEQ regulations. However, the Michigan Court of

Appeals' determined that the Village was unable to prove that the Plaintiff's water mains were noncompliant. As quoted above, the court held,

> [G]iven that defendant had not established that it was more likely than not plaintiff–rather than defendant–that attached pipes to the water system without a proper permit, we are not definitely and firmly convinced that the trial court made a mistake when it found that defendant had not established that plaintiff violated the Mayville Code.

ECF No. 24-21 at PageID.727.

Accordingly, the Village is precluded by the state Court of Appeal's decision as well as the state trial court's decision from refusing to furnish Plaintiff with municipal water on the basis that Plaintiff's water mains are noncompliant. If Plaintiff's water mains are in fact noncompliant, the obligation to rectify the situation is the Village's because the Court of Appeals found that the Village was unable to establish that "it was more likely than not plaintiff–rather than defendant–that attached pipes to the water system without a proper permit." *Id.* Indeed that conclusion is consistent with Judge Schmidt's conclusion in the trial court when he provided that if the Village's "requests are unreasonable, there may be a new cause of action that may be brought…against the village." ECF No. 19-5 at PageID.444-4445.

Plaintiff filed its amended complaint a year ago and the Michigan Court of Appeals only recently published its opinion. The opinion is significant because it provides valuable clarification on the situation. Accordingly, Plaintiff will be given the opportunity to supplement its complaint to reflect the Court of Appeals' holding and its impact on Plaintiff's claims for relief.

**V.**

It is **ORDERED** that Plaintiff is **DIRECTED** to supplement its amended complaint, ECF No. 9, as directed above on or before **January 17, 2020**.

It is further **ORDERED** that the Scheduling Order is **AMENDED** as follows:

| | |
|---|---|
| Rule 26(A)(3)(B) Disclosures: | March 9, 2020 |
| Final Pretrial Submissions: | April 7, 2020 |
| Final Pretrial Conference: | April 14, 2020 at 2:00pm |
| Jury Trial: | April 28, 2020 at 8:30am |

Dated: December 20, 2019        s/Thomas L. Ludington
                                THOMAS L. LUDINGTON
                                United States District Judge