UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

AUTUMN ACRES SENIOR VILLAGE, INC.,

        Plaintiff,

v                                                    Case No. 18-13119
                                                    Honorable Thomas L. Ludington

VILLAGE OF MAYVILLE, BARBARA VALENTINE,

        Defendants.
_____/

**ORDER DENYING MOTION TO DISMISS AND STAYING CASE**

On October 4, 2018, Plaintiff Autumn Acres Senior Village, Inc. ("Autumn Acres") filed a Complaint against Defendants Village of Mayville (the "Village") and Barbara Valentine. ECF No. 1 at PageID.1. On December 20, 2018, Plaintiff filed an Amended Complaint, identifying four causes of action against the Village. ECF No. 9 at PageID.52. Count I alleges that the Village engaged in an illegal taking when it refused to provide Plaintiff with a municipal water connection. Count II contends that the Village's refusal to provide a water connection deprived Autumn Acres of its constitutionally protected rights of due process. *Id*. at PageID.71. Count III asserts that the Village violated Autumn Acres' federal and state equal protection rights by treating Autumn Acres differently than other developers. *Id.* at PageID.73. Count IV claims that the Village made false and defamatory statements regarding Autumn Acres' illicit extension of the water main. *Id.* at PageID.74-75.

**I.**

Two prior state court proceedings occurred relating to the allegations made in Plaintiff's complaint. The first was filed on May 12, 2014 and heard in 71-B District Court in Tuscola County.

The second was filed on November 16, 2015, in the 54th Circuit Court for Tuscola County. The parties appealed the 54th Circuit Court decision.

While the appeal of the state court proceeding was pending, Defendant filed a Motion to Dismiss this case on June 5, 2019. ECF No. 17 at PageID.129. Plaintiff filed its response to the Motion to Dismiss on June 24, 2019. ECF No. 19 at PageID.225. Though permitted to file a reply pursuant to Local Rule 7.1(e)(C), Defendants did not do so.

On October 30, 2019, the parties were directed to file supplemental briefing to provide additional factual information. ECF No. 21. On November 19, 2019, the Michigan Court of Appeals entered its order, affirming the decision of the 54th Circuit Court. The next day, the parties submitted their supplemental briefing to this Court.

**II.**

The property at issue (the "Property") consists of roughly 12 acres. ECF No. 23-2 at PageID.498. Plaintiff purchased the Property in 2000 for approximately $54,000 with the intent to develop the Property into a senior village for individuals 55 years of age and older. *Id.* The Property did not have municipal water service at the time of purchase. *Id.*

On the Property is a drive formerly owned by Plaintiff called "Roller Way." It runs north-south and is perpendicular to "Main Street." In 2003, Plaintiff dedicated as a right of way to the Village the first 140 feet of Roller Way running from Main Street, making those 140 feet a public road. *Id.* at PageID.503.

Five structures exist on the Property that are relevant to this case. In 2003, Plaintiff constructed a duplex near the southern border of the Property ("320 and 325 Roller Way"). ECF No. 23-2 at PageID.500. In 2006 and 2007, Plaintiff constructed another duplex north of 320 and 325 Roller Way ("324A and 324B Roller Way"). *Id.* at PageID.501. The home of Plaintiff's

principal, Clare Roller, is located northwest of 324A and 324B Roller Way ("330 Roller Way"). In 2013, Plaintiff installed two mobile homes east of 324A and 324B ("325 and 327 Roller Way").

**A.**

In 2006, Roger Sweet was employed with the Village's Department of Public Works ("DPW") as the DPW Supervisor. According to Roller, Sweet told him that the Village would provide the Property with municipal water via a water main. The water main would run north from the Main Street water main along Roller Way.

According to Roller, he and Sweet measured the entirety of the proposed water main and determined that it would need to be approximately 360 feet in length. *Id.* at PageID.503. Sweet told Roller that the Village would pay for the first 140 feet of the water line ("First Extension") because the Village owned the first 140 feet of Roller Way. Plaintiff would be responsible for paying for the remaining 220 feet in length ("Second Extension). *Id.* at PageID.504. In 2007, a contractor, Henry Bollon, installed the 360-foot water main. The Village later billed Plaintiff for 200 feet of water main materials. *See* ECF No. 24-11.

In 2011, Bollon extended the water main to 330 Roller Way ("Third Extension"). Roller claims that Sweet approved the Third Extension. ECF No. 23-2 at PageID.506.

In 2013, Roller installed his two mobile homes, 325 and 327 Roller Way. ECF No. 23-2 at PageID.507. He claims that earlier that year, the Village had agreed to provide 325 and 327 Roller Way access to municipal water for $1,800. *See* ECF No. 19-2 at PageID.257; ECF No. 23-8 at PageID.553. To accomplish this, the Village constructed a water meter pit south of 325 Roller Way. ECF No. 19-2 at PageID.264. The pit soon flooded with groundwater. *Id.* Regardless, the Village sent Roller an invoice totaling more than $3,000 for the construction of the pit, notwithstanding the estimate for $1,800. ECF No. 23-4 at PageID.523.

Roller then installed a water line from 330 Roller Way to the meter pit ("Fourth Extension"). ECF No. 23-2 at PageID.508. He later ran a water line from the meter pit to 325 and 327 Roller Way ("Fifth Extension"). Roller claims that he received approval to construct the Fourth Extension, but did not receive approval to construct the Fifth Extension.

**B.**

For reasons that are not immediately clear, the Village contends that "the parties only agreed to extend municipal water for 140' and that all water line extensions beyond 140' are in violation of Village's Ordinances and MDEQ standards." ECF No. 23 at PageID.484. Accordingly, the Village claims that Roller did not receive approval to construct Extensions 2, 3, 4, or 5.

**III.**

As earlier noted, two state court cases in Tuscola County have arisen out of these events, one in 71-B District Court and the other in the 54th Circuit Court.

**A.**

The first case was in 71-B District Court in Tuscola County.[1] ECF No. 23-4. Plaintiff alleged that the Village improperly constructed the meter pit. ECF No. 23-4. The Village filed a countercomplaint alleging that Plaintiff had violated various provisions of the Mayville Water Ordinance. The Village then filed a motion for a directed verdict.

Judge Glaspie granted the motion, finding that Plaintiff violated the Mayville Water Ordinance when he constructed the Fifth Extension from the meter pit to 325 and 327 Roller Way. *See* ECF No. 24-8 at PageID.682-683. Judge Glaspie made clear however that outstanding issues remained. *Id.* at PageID.683-384 ("[T]here's still issues here about what cost, if any, the Plaintiff

---

[1] Plaintiff originally filed the case in Tuscola County Circuit Court on May 12, 2014. It was later transferred to 71-B District court in Tuscola County.

should incur as a result of the installation and costs of the water pit…He agreed to pay 1800, there were charges of 3200.").

Plaintiff disconnected the Fifth Extension. However, neither party has explained how the remaining issues in the case were resolved, specifically whether the Village had properly constructed the meter pit, why the charges were $3,200.00, and who paid these expenses.

**B.**

Plaintiff claims that the Village "did not turn on water to the…mobile homes after the Plaintiff disconnected the temporary connection in August 2015." ECF No. 9 at PageID.58. Accordingly, on November 16, 2015, Plaintiff filed a complaint against the Village in the 54th Circuit Court for Tuscola County and appeared before Judge Kenneth W. Schmidt. The complaint provides, "As of October 2014, Plaintiff had tendered to the Village the balance of remaining costs and fees due and/or which were required to be tendered under the Plaintiffs agreement with the Defendant for Defendant's installation of water meters." ECF No. 17-2 at PageID.157. The complaint presented the following five counts: [1] breach of contract to connect the mobile homes to the water supply with individual meters; [2] promissory estoppel; [3] breach of implied contract; [4] restitution for the payment of water and sewer usage fees and taxes; and [5] regulatory taking. *Id.* at PageID.158-161.

The Village then filed a Counter-Complaint, claiming that Autumn Acres had illegally extended the water main beyond the First Extension without a permit or authorization. The Village requested: [1] a declaratory judgment that the water main extension was in violation of local ordinances and the Michigan Safe Drinking Water Act and [2] that the court enjoin Autumn Acres from using the water main until it was brought into compliance.

In August 2017, a jury trial was held to determine Counts I and II of Plaintiff's complaint. Determining whether the Village had approved extensions beyond Extension 1 and entered into a contract with Plaintiff was complicated by the fact that Roger Sweet had died. ECF No. 19-2 at PageID.262, 278; ECF No. 19-3 at PageID.319, 337. In arguing that a contract for the provision of water services existed, Plaintiff relied upon a memorandum of the meeting between Roller and members of the Village government. ECF No. 19-2 at PageID.257-260; ECF No. 19-3 at PageID.306. The memorandum provided in part that Roller "wanted to have a meter installed and agreed to pay the tap in fees that amounted to around 1800.00." ECF No. 23-8 at PageID.553.

The jury found that a contract existed, providing that the Village was required to connect the two mobile homes to the water supply. ECF No. 17-3 at PageID.194-195. It further found that the Village did not breach the contract, but that presumably its obligation to furnish water remained executory. *Id.*

Judge Schmidt subsequently held a bench trial to determine Counts III-V. Concerning Count III, he held that because there was an express contract, there was no implied contract or contract based on promissory estoppel. *Id*. at PageID.199. Concerning Count IV, restitution, he held in favor of the Village. *Id*. at PageID.203. Concerning Count V, he determined that no regulatory taking had occurred. *Id.* Lastly, he dismissed Defendant's counter-complaint, holding that "the doctrine of Latches [*sic*] and/or Estoppel [] bars the relief sought in the counter-complaint at this time." ECF No. 17-3.

Plaintiff later filed a motion for judgment notwithstanding the verdict or a new trial. At that hearing, Judge Schmidt clarified that Plaintiff could bring a supplemental claim or a new claim against Defendants if Defendants unreasonably withheld water services. The transcript provides:

> So that's--that is open frankly as to future negotiations as to what the--the village may have to do in order to give water service to the two mobile homes, and perhaps

other developments that may occur in the future. And if the--as we talked about during argument, *if those requests are unreasonable, there may be a new cause of action that may be brought to--against the village*.

ECF No. 19-5 at PageID.444-445 (emphasis added).

## C.

The parties appealed the decision. On November 19, 2019, post-dating the parties' pleadings in this case, the Michigan Court of Appeals affirmed the trial court's verdict. ECF No. 23-11. It held that there was evidence that corroborated Plaintiff's contention that he had the Village's consent and participation for at least three of the four extensions past the First Extension. It cites to Roller's and Bollon's testimony in which both men testified that Sweet was present at the time of the excavations. It found persuasive the fact that "defendant charged Roller for 200 feet of eight-inch water main in December 2007" despite the Village's contention that it only approved of the First Extension, measuring 140 feet. ECF No. 24-21 at PageID.726. It also held that "[w]hile defendant's president testified that if Sweet had performed a water-main extension, he would have been expected to report it to defendant's council, that does not establish that Sweet did not in fact perform the extension without reporting it." *Id.*

In closing, the court stated:

Because the evidence established that Sweet applied for a permit for 140 feet, but Sweet worked on extending the water main to the duplex with plaintiffs contractor, and Sweet charged Roller for 200 feet of eight-inch water main, we are not definitely and firmly convinced that the trial court made a mistake when it found that plaintiff had not violated the [Safe Drinking Water Act]. Likewise, *given that defendant had not established that it was more likely than not plaintiff–rather than defendant–that attached pipes to the water system without a proper permit, we are not definitely and firmly convinced that the trial court made a mistake when it found that defendant had not established that plaintiff violated the Mayville Code.*

*Id.* at PageID.727 (emphasis added).

## D.

On October 4, 2018, Plaintiff filed a complaint beginning this case against Defendants. Plaintiff then filed an amended complaint on December 20, 2018. ECF Nos. 1, 9. Plaintiff claims that after the 2017 state court proceeding before Judge Schmidt, Plaintiff contacted the Village about providing 325 and 327 Roller Way with water service. ECF. No. 9 at PageID.61. According to Plaintiff, the Village responded that it would not provide Plaintiff any water service past the First Extension until Plaintiff complied with Village ordinances and MDEQ regulations. *Id.* at PageID. 61-62. Additionally, Plaintiff would have to pay for excavations in at least four locations and the installation of a hydrant (amongst other conditions). *Id.* at PageID.66. Plaintiff claims that these are unconstitutional "ultimatums" premised on false assertions that the Village was uninvolved in the water line extensions past First Extension. *Id.*

**E.**

On June 5, 2019, Defendants filed a motion to dismiss, claiming that Plaintiff's amended complaint is precluded by res judicata due to the two prior state court proceedings. ECF No. 17.

The Court subsequently ordered the parties to show cause why the case should not be dismissed because Plaintiff's claims of breach of contract potentially did not qualify as violations of due process. The Court also ordered the parties to show cause why it should not abstain addressing the constitutional claims until the state claims were exhausted.

Defendant's motion to dismiss and the parties' responses to the order to show cause will each be addressed in turn.

**IV.**

The Village's motion to dismiss will be addressed first.

**A.**

The Village claims that Counts I, II, and III of Plaintiff's federal complaint are barred by res judicata. Res judicata prevents a previously adjudged claim or issue from being decided again in a subsequent case. "[A] right, question or fact distinctly put in issue and directly determined by a court of competent jurisdiction … cannot be disputed in a subsequent suit between the same parties or their privities." *Montana v. U.S.*, 440 U.S. 147, 153 (1979) (quoting *Southern Pacific R. Co. v. U.S.*, 168 U.S. 1, 48-49).

Res judicata, or claim preclusion (as opposed to collateral estoppel, or issue preclusion) prevents a party from bringing a claim that has already been resolved in a prior judgment. Under Michigan law, a prior judgment will have a preclusive effect upon a subsequent claim when: [1] the first action was decided on the merits; [2] the matter at issue in the second case was or could have been resolved in the first; and [3] both actions involve the same parties. *Bd. Of Cty. Rd. Comm'rs for the Cty. Of Eaton v. Schultz,* 205 Mich. App. 371, 375-76 (Mich. Ct. App. 1994).ECF No. 17 at PageID.131.

The Village contends that Count I of Plaintiff's federal complaint merely reasserts the takings claims that were already raised and rejected in state trial court and that Counts II and III assert claims that arise from the contractual claims also litigated and decided in state court. *Id*. at PageID.151-152. It further argues that the federal complaint presents only one new claim, a claim of defamation under state law (Count IV). If Counts I, II, and III are dismissed, Count IV could not continue in federal court as a state court claim. *Id*. at PageID.152.

**B.**

The Village's motion will be denied. The state courts already determined that the Village has an executory contractual obligation to Plaintiff. As explained by this Court in a previous order:

> [B]oth the Circuit Court and the Michigan Court of Appeals[] have concluded that
> the Village has an executory obligation to provide 325 and 327 Roller Way with

municipal water. The Village contends that it will fulfill this obligation once Plaintiff brings its water mains into compliance with the Village ordinances and MDEQ regulations. However, the Michigan Court of Appeals' determined that the Village was unable to prove that the Plaintiff's water mains were noncompliant. As quoted above, the court held,

> [G]iven that defendant had not established that it was more likely than not plaintiff–rather than defendant–that attached pipes to the water system without a proper permit, we are not definitely and firmly convinced that the trial court made a mistake when it found that defendant had not established that plaintiff violated the Mayville Code.

Accordingly, the Village is precluded by the state Court of Appeal's decision as well as the state trial court's decision from refusing to furnish Plaintiff with municipal water on the basis that Plaintiff's water mains are noncompliant. If Plaintiff's water mains are in fact noncompliant, the obligation to rectify the situation is the Village's because the Court of Appeals found that the Village was unable to establish that "it was more likely than not plaintiff–rather than defendant–that attached pipes to the water system without a proper permit." *Id.* Indeed that conclusion is consistent with Judge Schmidt's conclusion in the trial court when he provided that if the Village's "requests are unreasonable, there may be a new cause of action that may be brought…against the village."

ECF No. 27 at PageID.748-749.

Plaintiff has now brought a claim that the Village is not fulfilling its contractual obligation by unreasonably withholding water services. The state court did not address this issue because it expressly stated that Plaintiff could return to the state court if the Village did not fulfill its contractual obligations. Res judicata is inapplicable because the issue could not, at that juncture, have been addressed by the state court. But the state court invited Plaintiff to return if the Village did not fulfill its obligation.

Accordingly, Defendant's motion to dismiss will be denied.

**V.**

The case will be stayed on principles of abstention.

**A.**

The general rule is that "the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction." *McClellan v. Carland*, 217 U.S. 268, 282 (1910). *See also RSM Richter, Inc. v. Behr Am., Inc.*, 729 F.3d 553, 557 (6th Cir. 2013) ("The Supreme Court has repeatedly held . . . that the mere pendency of a state-court case concerning the same subject matter as a federal case is not reason enough to abstain."). However, in *Colorado River*, the Supreme Court held that abstention by federal courts was justified by the need for judicial efficiency and federal-state comity in some limited circumstances where there was a "contemporaneous exercise of concurrent" jurisdiction by state and federal courts. 424 U.S. at 817. Still, because federal courts have a "virtually unflagging obligation . . . to exercise the jurisdiction given them," abstention is disfavored. *Id.* Federal courts should decline to hear a case over which they have jurisdiction only in extraordinary and narrow circumstances where the justification for abstention is clear. *Colorado River*, 424 U.S. at 813; *RSM Richter, Inc.*, 729 F.3d at 557.

In order to determine whether the exceptional circumstances necessary to justify *Colorado River* abstention are present, a court must engage in a two-step inquiry. First, the court must determine whether the state proceeding is truly parallel to the federal case. *Crawley v. Hamilton Cty. Comm'rs*, 744 F.2d 28, 31 (6th Cir. 1984). The relevant question is not whether the state claim could "be modified so as to make it identical to the current federal claim." *Id.* Rather, the issue is whether the cases are currently parallel. *Id.* "[E]xact parallelism . . . is not required." *Nakash v. Marciano*, 882 F.2d 1411, 1416 (9th Cir. 1989). Rather, the two proceedings need only be "substantially similar." *Id.* (omitting citations).

Second, the court must determine whether "judicial economy warrants abstention." *Blake v. Wells Fargo Bank, NA, et al.*, 917 F. Supp. 2d 732, 737 (S.D. Ohio 2013). The "decision whether

to dismiss a federal action because of parallel state-court litigation does not rest on a mechanical checklist, but on a careful balancing of the important factors as they apply in a given case, with the balance heavily weighted in favor of the exercise of jurisdiction." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 16 (1983). The factors to be considered include:

> (1) whether the state court has assumed jurisdiction over any res or property; (2) whether the federal forum is less convenient to the parties; (3) avoidance of piecemeal litigation; and (4) the order in which jurisdiction was obtained. . . . (5) whether the source of governing law is state or federal, (6) the adequacy of the state court action to protect the federal plaintiff's rights, (7) the relative progress of the state and federal proceedings, and (8) the presence or absence of concurrent jurisdiction.

*Romine v. Compuserve Corp.*, 160 F.3d 337, 340–41 (6th Cir. 1998) (citations omitted).

**B.**

The state court action and federal court action are parallel. Further, a proper balancing of the factors outlined in *Colorado Water* and *Moses H. Cone* indicate that judicial economy warrants abstention.

**1.**

As a threshold matter, Plaintiff contends that abstention is not merited because "there is no open State Court case at this time and the case was already in the Court of Appeals when this federal case was filed." ECF No. 31. Even if true, however, this does not defeat the parallelism of the two cases. First, both suits involve the same parties. Second, the threshold issue is identical in both the previous state court action and the current federal action, specifically whether the Village has fulfilled its executory obligation to furnish Plaintiff with water. The mere fact that there are federal claims in the federal suit which have not been raised in the state court action does not defeat the parallelism between the suits. "[O]ne cannot merely advance a different legal theory to obtain a remedy and counter abstention." *Kopacz v. Hopkinsville Surface & Storm Water Util.*, 714 F. Supp. 2d 682, 688 (W.D. Ky. 2010) (citing *Crown Enterprises, Inc. v. Lambert*, No. 06-CV-13206,

2006 WL 2844445, at *2 (E.D. Mich. Sept. 29, 2006)). *See also Telesco v. Telesco Fuel & Masons' Materials, Inc.*, 765 F.2d 356, 362 (2d Cir. 1985) ("Merely raising an alternative theory of recovery, which may still be raised in state court, is not enough to differentiate the federal suit from the state suit.").

Furthermore, Plaintiff returning to state court will resolve all contested legal and factual issues in both cases. Once the state court has determined whether the Village failed to fulfill its executory obligation under the contract, it will have resolved Plaintiff's claims of due process violation. This Court would "have nothing further to do in resolving any substantive part of the case." *Moses H. Cone Mem'l Hosp*, 460 U.S. at 28.

The principles which undergird the *Colorado Water* doctrine, including the interests in judicial economy, avoidance of piecemeal adjudication, and wise judicial administration, support a finding of parallelism. 424 U.S. at 819. Because the common threshold issue across the two actions is substantially likely to resolve the federal claims, there is sufficient parallelism to reach the second stage of the analysis.

## 2.

In the second stage of the analysis, the various factors outlined in *Colorado River* and *Moses H. Cone* must be weighed. As already mentioned, federal courts have a "virtually unflagging obligation . . . to exercise the jurisdiction given them," and so abstention can only be justified by exceptional circumstances. *Colorado River*, 424 U.S. at 817–18.

A consideration of the factors weighs in favor of abstaining and staying the case. Plaintiff has already filed two state court actions based on the same set of facts. Its action here in federal court is its third. The state courts were the first to address Plaintiff's claims and neither party has disputed the adequacy of the state court proceedings. Furthermore, Plaintiff has received favorable

judgments from the state courts. Judge Schmidt invited Plaintiff to return if the Village failed to fulfill its obligations under the contract to furnish water services.

> So that's--that is open frankly as to future negotiations as to what the--the village may have to do in order to give water service to the two mobile homes, and perhaps other developments that may occur in the future. And if the--as we talked about during argument, *if those requests are unreasonable, there may be a new cause of action that may be brought to--against the village*.

ECF No. 19-5 at PageID.444-445 (emphasis added). The Michigan Court of Appeals subsequently affirmed Judge Schmidt's decision.

The Court will stay this case. Plaintiff has not alleged that the state courts furnished inadequate process in addressing its claims. It is mystifying why Plaintiff would concurrently seek a due process claim in federal court when the state courts have not only provided Plaintiff with an adequate remedy, but have invited it to return should the Village fail to fulfill its contractual obligations. Plaintiff is creating piecemeal litigation, requiring the time and resources of both state and federal courts. This would be avoided if Plaintiff would return to state court and seek resolution of the issues that the state courts have offered to address.

## VI.

Accordingly, it is **ORDERED**, that Defendant's Motion to Dismiss, ECF No. 17, is **DENIED**.

It is further **ORDERED** that the case is **STAYED**.

It is further **ORDERED** that a status conference is scheduled for **July 7, 2020** at **2:00 p.m.**

Dated: March 18, 2020          s/Thomas L. Ludington
                                                   THOMAS L. LUDINGTON
                                                   United States District Judge